```
                 IN THE UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF PENNSYLVANIA


STATE FARM FIRE AND CASUALTY        :
COMPANY,                            :    CIVIL ACTION
                                    :    NO. 15-6619
          Plaintiff,                :
                                    :
     v.                             :
                                    :
KIM'S ASIA CONSTRUCTION,            :
                                    :
          Defendant.                :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              October 5, 2016

       This action results from an underlying lawsuit in which Powerline Imports, Inc. ("Powerline") alleges that Kim's Asia Construction ("Kim's Asia") negligently installed, on Powerline's property, a new roof that leaks during minor rain storms. Kim's Asia is seeking defense and indemnification in the underlying action from State Farm Fire and Casualty Company ("State Farm"), the insurer of Kim's Asia and the plaintiff in the instant action. In this action, State Farm seeks a declaratory judgment that it is under no duty to defend or indemnify Kim's Asia in the underlying action. State Farm has moved for judgment on the pleadings, or in the alternative, for

summary judgment.  For the reasons that follow, the Court will grant State Farm's motion.

I. **BACKGROUND**[1]

In December 2011, Kim's Asia contracted with Powerline to remove and dispose of Powerline's existing roof and install a new roof at Powerline's place of business in East Rutherford, New Jersey.  Am. Compl. ¶ 26, ECF No. 3.  On February 3, 2015, following Kim's Asia's completion of the project, Powerline filed an action in the Superior Court of Bergen County, New Jersey (the "Underlying Action"), alleging that Kim's Asia's negligent construction of the roof causes the roof to leak during minor rain storms.  See Complaint and Jury Demand, Powerline Imports, Inc. v. Kim's Asia Constructor, Case No. L-1131-15 (N.J. Super. Ct. Bergen Cty. Feb. 3, 2015), ECF No. 15-3 (the "Underlying Complaint").

In the Underlying Action, Powerline alleges that it contacted Kim's Asia regarding the leaks and Kim's Asia conducted additional repairs, but those additional repairs did not resolve the issue.  Underlying Complaint ¶¶ 4-6.  Powerline further alleges that Kim's Asia subsequently stopped responding to Powerline's phone calls, and Powerline was forced to engage a new contractor to remove and dispose of the roof installed by

---

[1] Disputed facts are construed in favor of Kim's Asia, the nonmoving party.

Kim's Asia and install another new roof.  Id. ¶ 10.  As a result, Powerline brought causes of action against Kim's Asia based on (1) "negligence, intentional acts, fraud, Consumer fraud, breach of contract and breach of warranty" (Count One) and (2) violations of the New Jersey Consumer Fraud Act (Count Two).  Id. ¶ 14.

Kim's Asia sought defense and indemnification in the Underlying Action from State Farm, its insurer, based on a one-year comprehensive business liability insurance policy that State Farm issued to Kim's Asia on April 18, 2011 ("the Policy").  Am. Compl. ¶¶ 7, 15.

The Policy includes defense and indemnification coverage for property damage under certain circumstances.  See ECF No. 15-2 at 42.[2]  Specifically, the Policy provides that State Farm "will pay those sums that the insured becomes legally obligated to pay as damages because of <u>bodily injury, property damage, personal injury or advertising injury</u> to which this insurance applies."  ECF No. 15-2 at 42.  The Policy clarifies that it applies only "to <u>bodily injury</u> or <u>property damage</u> caused by an <u>occurrence</u> which takes place in the <u>coverage territory</u> during the policy period."  Id.  Section II of the Policy defines "occurrence" as "an accident, including continuous or

---

[2] The page numbers used herein for ECF No. 15-2 refer to the ECF pagination.

3

repeated exposure to substantially the same general harmful conditions which result in bodily injury or property damage." Id. at 53.

State Farm began defending Kim's Asia in the Underlying Action under a reservation of rights. Am. Compl. ¶ 11; Answer ¶ 11. On December 15, 2015, State Farm filed the initial complaint in the instant action, seeking a declaratory judgment that it has no duty to defend or indemnify Kim's Asia in the Underlying Action. ECF No. 1. State Farm filed an Amended Complaint on January 12, 2016. ECF No. 3. The Clerk entered default judgment against Kim's Asia on April 27, 2016, for failure to appear, plead, or otherwise defend the action. In response to Kim's Asia's subsequent motion to vacate the Clerk's entry of default, the Court vacated the entry of default on June 1, 2016. ECF No. 10. Kim's Asia filed an Answer to the Amended Complaint on June 15, 2016. ECF No. 11.

On August 2, 2016, State Farm filed a Motion for Judgment on the Pleadings and/or Motion for Summary Judgment. ECF No. 15. Kim's Asia filed a brief in opposition, ECF No. 16, and State Farm filed a reply brief, ECF No. 17. The motion is now ripe for disposition.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides, "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Judgment on the pleadings is appropriate only if the moving party "clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." Soc'y Hill Civic Ass'n v. Harris, 632 F.2d 1045, 1054 (3d Cir. 1980) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1368, at 690 (1960)). In reviewing a Rule 12(c) motion, a court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008) (quoting Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290-91 (3d Cir. 1988)).

When a party's Rule 12(c) motion is "based on the theory that the plaintiff failed to state a claim," the motion is "reviewed under the same standards that apply to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." Caprio v. Healthcare Revenue Recovery Grp., LLC, 709 F.3d 142, 146-47 (3d Cir. 2013). In order to withstand a motion to dismiss, a complaint must include factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 555 (2007).  Satisfying that standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id.  Rather, the pleadings "must contain sufficient factual matter, which if accepted as true, states a facially plausible claim for relief."  Caprio, 709 F.3d at 147. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Summary judgment is awarded under Federal Rule of Civil Procedure 56 when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Liberty Mut. Ins. Co. v. Sweeney, 689 F.3d 288, 292 (3d Cir. 2012).  "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact."  Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views all facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party, who must "set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 250.

**III. DISCUSSION**

This Court has diversity jurisdiction over this action under 28 U.S.C. 1332(a) and therefore must apply the choice of law rules of the forum state in which it sits. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). While the Policy does not contain a choice of law provision and neither party states in its pleadings or briefing that Pennsylvania law applies, both parties rely solely on Pennsylvania law in their written submissions to the Court, indicating their agreement that Pennsylvania law applies. See Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1005 n.1 (3d Cir. 1980)

7

(applying Pennsylvania law to case where parties do not dispute its application). Therefore, Pennsylvania state law governs this action.

It is "well established" in Pennsylvania that "an insurer's duties under an insurance policy are triggered by the language of the complaint against the insured." Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 896 (Pa. 2006). As the Supreme Court of Pennsylvania has explained, whether an insurer has the obligation to defend a suit brought by a third party against the insured "is to be determined solely by the allegations of the complaint in the action." Id. (quoting Wilson v. Maryland Cas. Co., 105 A.2d 304, 307 (Pa. 1954)).[3] In performing this analysis, a court should first "look to the language of the policies themselves to determine in which instances they will provide coverage," and then "examine [the third party's] complaint to determine whether the allegations set forth therein constitute the type of instances that will trigger coverage." Id. at 896-97. If a

---

[3] Kim's Asia claims that State Farm owes a duty to defend Kim's Asia in the Underlying Action, as well as a duty to indemnify Kim's Asia against any damages assessed. See Am. Compl. ¶ 10; Answer ¶ 10. Although "the duty to defend is separate from and broader than the duty to indemnify, both duties flow from a determination that the complaint triggers coverage." Kvaerner, 908 A.2d at 896 n.7. Therefore, if State Farm does not have a duty to defend Kim's Asia in the Underlying Action, it also does not have a duty to indemnify. See id.

8

court determines that a "single claim in a multiclaim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim." Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999).

"The interpretation of an insurance policy is a question of law." Kvaerner, 908 A.2d at 897 (citing 401 Fourth St. v. Inv'rs Ins. Co., 879 A.2d 166, 170 (Pa. 2005)). A court's primary goal in interpreting an insurance policy is to "ascertain the parties' intentions as manifested by the policy's terms." Id. "When the language of the policy is clear and unambiguous, we must give effect to that language." Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290 (Pa. 2007) (quoting Kvaerner, 908 A.2d at 897). "However, 'when a provision in the policy is ambiguous, the policy is to be construed in favor of the insured . . . .'" Id. (quoting Kvaerner, 908 A.2d at 897).

In its motion, State Farm argues that (1) the Underlying Complaint's allegations essentially amount to a claim of property damage based on faulty workmanship, which the Supreme Court of Pennsylvania has held cannot constitute an "occurrence" under the definition provided in the Policy; and (2) Powerline's conclusory allegations based on Kim's Asia's

9

"negligence" do not bring the Underlying Action within the scope of the Policy. See ECF No. 15-1 at 9-14. The Court agrees.

In Kvaerner, the Supreme Court of Pennsylvania interpreted insurance policy language nearly identical to the language at issue here. Compare Kvaerner, 908 A.2d at 897 (analyzing policy defining "occurrence" as "an accident, including continuous or repeated exposure to substantially the same or general harmful conditions") with ECF No. 15-2 at 53 (defining "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in bodily injury or property damage"). There, the plaintiff in the underlying action brought breach of contract and breach of warranty claims against a coke battery builder for allegedly selling it a "damaged" battery that did not meet the contract specifications and warranties. Kvaerner, 908 A.2d at 891. As the policy at issue did not contain a definition of "accident," the court looked to the dictionary definition: an "unexpected and undesirable event" or "something that occurs unexpectedly or unintentionally." Id. at 898. Characterizing the claims in the underlying action as based on "faulty workmanship," the court found that the key term in the definition of "accident" - the term "unexpected" - "implies a degree of fortuity that is not present in a claim for faulty workmanship." Id. Therefore, the court held, the claims were

10

not covered under the policy.  Id. at 900.  In so holding, the court explained that permitting insured parties to force their insurers to defend and indemnify against claims for faulty workmanship resulting in damage to the work product itself would "convert a policy for insurance into a performance bond."  Id. at 899.

In the instant action, the Underlying Complaint alleges that the roof Kim's Asia constructed "leaked during minor rain storms," that additional work conducted by Kim's Asia did not resolve the leaks, and that "[t]he roof installed by [Kim's Asia] leaks worse than before it was replaced." Underlying Complaint ¶¶ 3, 6, 8.  The Underlying Complaint further alleges that Kim's Asia "negligently installed a roof which leaks so badly that it cannot be repaired and needs to be completely replaced."  Id. ¶ 11.  All of these allegations relate directly to Kim's Asia's allegedly poor construction of the roof it agreed to build, and therefore amount to a claim for faulty workmanship.  Under Pennsylvania law, such claims are not covered under the definition of "accident" required to establish an "occurrence" under the Policy.  See Kvaerner, 908 A.2d at 898; see also Millers Capital Ins. Co. v. Gambone Bros. Dev. Co., 2007 PA Super 403, 941 A.2d 706, 713 (Pa. Super. Ct. 2007) (holding that "natural and foreseeable acts, such as rainfall, which tend to exacerbate the damage, effect, or consequences

11

caused ab initio by faulty workmanship also cannot be considered sufficiently fortuitous to constitute an 'occurrence' or 'accident' for the purposes of an occurrence-based [corporate general liability] policy").

The presence of the word "negligence" in the Underlying Complaint does not change the analysis. Under certain circumstances, negligence may be considered an "accident" qualifying as an "occurrence" under policy language like that at issue here. See, e.g., Baumhammers, 938 A.2d at 293 (holding that a shooting spree committed by insured defendants' son "cannot be said to be the natural and expected result of [defendants'] alleged acts of negligence," and therefore that plaintiff insurance company had a duty to defend the defendant parents in lawsuits related to the murders). In Baumhammers, the Supreme Court of Pennsylvania explained that the insurance policy applied because the injuries at issue "were caused by an event so unexpected, undesigned and fortuitous as to qualify as accidental within the terms of the policy." Id.

The key question is whether there is "a causal nexus between the property damage and an 'occurrence,' i.e., a fortuitous event." Specialty Surfaces Int'l v. Cont'l Cas. Co., 609 F.3d 223, 231 (3d Cir. 2010). Claims of faulty workmanship, in particular, cannot meet the definition of an "occurrence," even when characterized as a negligence claim, because they do

12

not involve the requisite "fortuity" identified in Kvaerner. See id. ("Faulty workmanship, even when cast as a negligence claim, does not constitute such an event; nor do natural and foreseeable events like rainfall."); Nationwide Mut. Ins. Co. v. CPB Int'l, Inc., 562 F.3d 591, 596 (3d Cir. 2009) (holding that faulty workmanship claims were not covered under a general corporate liability policy under Kvaerner because "it is largely within the insured's control whether it supplies the agreed-upon product, and the fact that contractual liability flows from the failure to provide that product is too foreseeable to be considered an accident"). In Specialty Services International, the Third Circuit affirmed the district court's holding that damages to the defendant subcontractor's own work product based on the subcontractor's alleged negligence were claims of damage based on faulty workmanship and therefore not an occurrence under Kvaerner. See 609 F.3d at 238.

Here, the Underlying Complaint does not allege anything "unexpected," "unintentional," or "fortuitous" about the damage to the roof. Indeed, nothing in the Underlying Complaint suggests that Powerline's claim is anything other than a claim of faulty workmanship. Therefore, the events alleged in the Underlying Complaint do not qualify as an "occurrence" under the Policy, and State Farm is not obligated to defend or indemnify Kim's Asia in the Underlying Action.

13

In its response, Kim's Asia does not argue that the Underlying Complaint contains allegations other than those relating to faulty workmanship. See ECF No. 16-1. Nor does Kim's Asia contend that the negligence claim in the Underlying Complaint includes allegations of some fortuitous event. See id. Instead, Kim's Asia posits an alternative cause for the leaks in the roof, claiming that the existing roof contained soft insulation that broke, causing the leaks. See ECF No. 16-1 at 3-4. Kim's Asia's argument may aid it in defense of the Underlying Action. However, in this action, the Court is limited to the language of the Underlying Complaint. Pennsylvania law is clear that an insurer's duty to defend a suit brought by a third party against the insured must be determined solely by the four corners of the underlying complaint. See Kvaerner, 908 A.2d at 896 (holding that the Superior Court erred in looking beyond the allegations raised in the underlying complaint and finding "no reason to expand upon the well-reasoned and long-standing rule that an insurer's duty to defend is triggered, if at all, by the factual averments contained in the complaint"). Kim's Asia's argument therefore has no relevance to State Farm's motion.

**IV. CONCLUSION**

For the foregoing reasons, the Court will grant State Farm's Motion for Judgment on the Pleadings and/or Motion for Summary Judgment, and judgment shall be entered in favor of State Farm and against Kim's Asia, declaring that State Farm has no duty to defend or indemnify Kim's Asia in the Underlying Action. An appropriate order follows.